**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JUDICIAL WATCH, INC.,          )
                                         )
          Plaintiff,          )
                                         )
vs.                               )       Civil Action No.06-CV-01135 (PLF)
                                         )
FEDERAL BUREAU OF        )
  INVESTIGATION,          )
                                         )
          Defendant.        )
_____)

**PLAINTIFF'S VERIFIED MOTION FOR AWARD OF ATTORNEY'S
FEES AND LITIGATION EXPENSES**

Plaintiff Judicial Watch, Inc. ("Judicial Watch"), by counsel and pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 1920, respectfully requests that it be awarded $12,144,68 in attorney's fees and litigation expenses in the above-captioned action.  The motion is supported by a verified itemization of attorney/paralegal time and expenses, which is attached hereto as Exhibit 1.  As grounds therefor, Judicial Watch states as follows:

**MEMORANDUM OF LAW**

I.      **Factual Background.**

This case involves Judicial Watch's efforts to obtain videotapes of the deliberate crash of Flight 77 into the Pentagon on September 11, 2001.  On December 15, 2004, Judicial Watch served a Freedom of Information Act ("FOIA") request on the Federal Bureau of Investigation ("FBI") that sought access to the following agency records:

> (1)    Video camera recording(s) obtained by federal official(s) and/or law enforcement from the Sheraton National Hotel in Arlington, Virginia, on or about September 11, 2001.

(2)     Video camera recording(s) obtained by any federal official(s) and/or law enforcement from a Nexcomm/Citgo gas station in the vicinity of the Pentagon on or about September 11, 2001.

(3)     Pentagon security video camera recording(s) showing Flight 77 strike and/or hit and/or crash into the Pentagon on September 11, 2001.

(4)     Closed Circuit Television (CCTV) video camera recording(s) obtained by any federal official(s) and/or law enforcement from the Virginia Department of Transportation ("VDOT") and/or the VDOT "Smart Traffic Center" on or about September 11, 2001.

Judicial Watch also sought a waiver of both search and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 5 U.S.C. § 552(a)(4)(A)(iii).

On December 29, 2004, Judicial Watch received a letter from David M. Hardy of the FBI's Records Management Division acknowledging receipt of Judicial Watch's December 15, 2004 request. Judicial Watch received a second letter from Mr. Hardy on March 22, 2005 stating that no documents responsive to paragraph 1 of Judicial Watch's FOIA request had been found. Mr. Hardy's letter further stated that documents responsive to paragraphs 2 through 4 had been found, but claimed the tapes were exempt from production pursuant to 5 U.S.C. § 552(b)(7)(A).

Judicial Watch filed an administrative appeal of the FBI's claim of exemption on April 4, 2005. On April 8, 2005, Judicial Watch received a letter from Priscilla Jones, Chief, Administrative Staff of the U.S. Department of Justice's Office of Information and Privacy, acknowledging receipt of Judicial Watch's administrative appeal. Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), the FBI's response to Judicial Watch's administrative appeal was due on or before May 3, 2005. The FBI failed to respond, however.

On May 22, 2006, more than one year after the FBI's response to Judicial Watch's administrative appeal was due, Judicial Watch sent a letter to the FBI regarding the status of the

appeal.  The letter noted that, in a similar case, *Judicial Watch, Inc., v. U.S. Dep't of Defense*, C.A. No. 06-0309 (RBW), the U.S. Department of Defense ("DoD") had invoked 5 U.S.C. § 552(b)(7)(A) to withhold another videotape depicting Flight 77 striking the Pentagon, but released the videotape to Judicial Watch on May 16, 2006, shortly after the trial of September 11, 2001 co-conspirator Zacarias Moussaoui had ended.  *See* Exhibit 2.  Judicial Watch received an acknowledgment letter from the FBI, but otherwise received no substantive response to its May 22, 2006 inquiry.  Nor did the FBI ever issue a determination in response to Judicial Watch's administrative appeal.

On June 22, 2006, Judicial Watch filed suit.  Due to the lengthy delay caused by the FBI's failure to produce the requested videotapes or otherwise respond to Judicial Watch's administrative appeal, as well as the intense public interest in the videotapes in general, Judicial Watch desired to obtain relief as soon as possible.[1]  Consequently, it simultaneously filed an application for a preliminary injunction and requested a hearing on its application.

On July 19, 2006, the parties entered into a stipulation and agreed order to resolve the application for a preliminary injunction and the lawsuit.  In the stipulation, the FBI admitted to possessing videotapes responsive to paragraphs 2 and 3 of Judicial Watch's FOIA request (the Citgo gas station and the Pentagon security cameras), but represented that it had erred in claiming earlier to possess any videotape responsive to paragraph 4 of the request.  Pursuant to the parties' stipulation and agreed order, the FBI was required to produce the Citgo videotape by October 18,

---

[1]    When Judicial Watch obtained the DoD videotape and posted it on its website, the public interest was so great that it overwhelmed the site.  The release of the videotape received national and international media attention and since has been viewed over 2 million times on YouTube.com.

2006.[2]  On July 27, 2006, U.S. District Court Judge Paul L. Friedman signed and approved the

parties' stipulation and agreed order, creating a legally enforceable court order.

In the interim, Judicial Watch filed a second FOIA request seeking access to another

videotape of the attack on the Pentagon.  Judicial Watch sought access to the following agency

records:

(1)     Video camera recording(s) obtained by federal official(s) and/or law
        enforcement from the Doubletree Hotel in Arlington, Virginia, showing
        the Pentagon and/or its environs, to include but not limited to, the impact
        of American Airlines Flight 77 on or about September 11, 2001.

This FOIA request was served on the FBI on June 29, 2006.  On August 3, 2006, having received

no acknowledgment of receipt, nor a response of any kind from the FBI to its June 29, 2006

request, Judicial Watch amended its complaint to include this additional violation of FOIA.

On August 14, 2006, the parties entered into a second stipulation and agreed order.  In the

second stipulation, the FBI admitted to possessing an additional videotape responsive to Judicial

Watch's June 29, 2006 FOIA request (the Doubletree Hotel videotape).  Pursuant to this second

stipulation and agreed order, the FBI was required to produce the Doubletree Hotel videotape by

November 9, 2006.[3]  On August 18, 2006, U.S. District Court Judge Paul L. Friedman signed and

---

[2]      The FBI expressed concern about the privacy of individuals appearing in the Citgo
videotape.  Judicial Watch did not oppose the FBI's redaction of these individuals from the
videotape prior to disclosure.  In addition, as Judicial Watch had obtained the Pentagon security
camera footage from DoD directly, it no longer sought production of this videotape from the FBI.

[3]      As with the Citgo videotape, the FBI expressed concern for the privacy of patrons
and employees of Doubletree who appeared in the videotape and sought to redact these
individuals.  Judicial Watch did not object.  Also, the second stipulation and agreed order made
clear that it did not alter the court-ordered due date for the Citgo videotape.

approved the second stipulation and agreed order, creating another legally enforceable court order.

Judicial Watch received the Citgo videotape on September 13, 2006.  After agreeing to a request by the FBI for an extension of time, Judicial received the Doubletree videotape on November 28, 2006.

**II.    Argument.**

    **A.    Judicial Watch is Entitled to an Award of Attorney's Fees.**

FOIA allows awards of attorney's fees to prevailing plaintiffs for two purposes:  (1) "to encourage Freedom of Information Act suits that benefit the public interest" and (2) to serve "as compensation for enduring an agency's unreasonable obduracy in refusing to comply with the Freedom of Information Act's requirements."  *LaSalle Extension Univ. v. Federal Trade Comm'n*, 627 F.2d 481, 484 (D.C. Cir. 1980).  To obtain an award, the requestor must demonstrate that (1) it has "substantially prevailed" and is thus eligible for an award; and (2) it is entitled to an award under a balancing of relevant factors.  *See Oil, Chemical and Atomic Workers Int'l Union v. Department of Energy*, 288 F.3d 452 (D.C. Cir. 2002); *Bricker v. FBI*, 54 F. Supp. 2d 1, 5 (D.D.C. 1999); *Northwest Coalition for Alternatives to Pesticides v. Browner*, 965 F. Supp. 59, 63 (D.D.C. 1997) (citing *Weisberg v. DOJ*, 848 F.2d 1265, 1268 (D.C. Cir. 1988)).

    **1.    Judicial Watch Has "Substantially Prevailed".**

A party has "substantially prevailed" if it has "been awarded some relief by [a] court, either in a judgment on the merits or in a court-ordered consent decree."  *Oil, Chemical, and Atomic Workers Int'l Union*, 288 F.3d at 456-57 (citing *Buckhannon Bd. & Care Home, Inc. v.*

5

*West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (internal quotations omitted).

Recently, in *Davy v. Central Intelligence Agency*, 456 F.3d 162, 165 (D.C. Cir. 2006), the D.C. Circuit held that a requestor substantially prevails in two ways when a district court issues an order:  first, by changing the "legal relationship between [the plaintiff] and the defendant;" and second, by awarding the plaintiff "some relief on the merits of his claim."  The parties in *Davy* had agreed to a joint stipulation for the production of the requested documents by a date certain, and the district court approved the joint stipulation.  *Id.* at 164.  On appeal the D.C. Circuit found that the trial court's memoralization of the parties' joint stipulation created a judicially enforceable order -- one that could have resulted in a finding of contempt if the agency failed to comply with the order.  As a result of the order, the plaintiff in *Davy* received the responsive records he had requested within a particular time frame, which the D.C. Circuit defined as changing the "legal relationship between" the parties and awarding the plaintiff "some relief on the merits."  *Id*. at 166.

Like the plaintiff in *Davy*, Judicial Watch succeeded in obtaining significant, court-ordered relief.  Through two, legally enforceable orders, Judicial Watch obtained both the Citgo and Doubletree videotapes.  Both orders required the FBI to produce requested records by a date certain.  Had the FBI failed to produce either videotape by the court-ordered date, the FBI would have faced contempt sanctions.  Clearly, by bringing this action and obtaining two court orders requiring the production of the requested videotapes, Judicial Watch has "substantially prevailed."

2.     **Balancing the Relevant Factors Warrants an Award.**

In addition, before granting an award of attorney's fees and litigation expenses to a requestor who has "substantially prevailed," a Court also must consider the following four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information." *Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1288 (D.C. Cir. 1998) (internal citations and quotations omitted). The second and third factors are "closely related and often considered together." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (quoting *Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992)). In determining a requestor's entitlement to an award of attorney's fees, the Court must balance all four factors. *Ralph Hoar & Assocs. v. Nat'l Hwy Traffic Safety Admin.*, 985 F. Supp. 1, 9 (D.D.C. 1997). The balancing of these factors in this case clearly supports awarding attorney's fees to Judicial Watch.

a.     **Public Benefit.**

According to the D.C. Circuit, a FOIA action results in a public benefit if a plaintiff's victory is "likely to add to the fund of information that citizens may use in making vital political choices." *Cotton*, 63 F.3d at 1120 (quoting *Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir. 1978)). In making this inquiry, it is important to note that the "central purpose" of FOIA is "to assist our citizenry in making the informed choices so vital to the maintenance of a popular form of government." *Blue*, 570 F.2d at 533.

The subject matter of the September 11, 2001 terrorist attacks is clearly one of tremendous public interest and tremendous public importance. The subject matter of the

7

videotapes at issue -- the deliberate crashing of Flight 77 into the Pentagon -- also has been the source of substantial public controversy. One aspect of this controversy that has piqued the public interest was the allegation, not made by Judicial Watch but discussed and circulated on the internet and in various alternative media sources, that the FBI, DoD, and/or other federal agencies have withheld or removed videographic evidence of the deliberate crashing of Flight 77 into the Pentagon in order to conceal important evidence from the public. In an effort to shed light on this allegation and to provide the public with as much information about the September 11, 2001 attack on the Pentagon as possible, Judicial Watch sought and obtained access to the videotapes to enable the public to see for itself what the videotapes show or do not show. Once it received the videotapes, Judicial Watch alerted the media and the public to their availability and posted them on the internet. *See* Exhibit 3.[4]

In this regard, it is irrelevant to the public interest analysis whether the Citgo videotape does or does not show Flight 77 striking the Pentagon or the explosion that followed. What is relevant is the existence of the videotape itself and the substantial public interest in viewing it.

---

[4]    Exhibit 3 consists of various press and media releases, newspaper stories and television transcripts regarding the videotapes. This represents just a sampling of the public interest these videotapes have generated. In addition to print and television coverage, the videotapes themselves, or portions thereof, are posted on the internet and have received a high degree of public interest. As of December 7, 2006, the Citgo video was posted by Judicial Watch itself and has been viewed over 128,000 times on YouTube.com. *See* http://www.youtube.com/watch?v=2LJvFjsl6zk. It was also posted on YouTube.com by two independent sources and viewed another 660 times. The Doubletree video was released to all of the major media outlets and, although the full 37 hours have not been posted on the internet, several sources have posted the clip of the Pentagon impact on the internet. As of December 7, 2006, six separate sources have posted the Doubletree Hotel clip, which has been viewed a combined 188,614 times. *See* http://www.youtube.com/watch?v= 5O8hXn0rOK8 and related Doubletree Hotel videos on www.youtube.com. Additionally, Judicial Watch itself has posted this particular clip on its website at: www.judicialwatch.org.

*See*, *e.g.*, Exhibit 4.  By obtaining a court order that compels the FBI to produce the videotape, then making the videotape available to the public, Judicial Watch performed an important public service.  The same is true for the Doubletree Hotel videotape, although the Doubletree Hotel videotape clearly shows the explosion.  *See*, *e.g.*, Exhibit 3; *see also* www.judicialwatch.org.

Moreover, Judicial Watch's success in compelling production of the Doubletree Hotel videotape in particular disproves an assertion made by the FBI in another lawsuit.  In a September 7, 2005 sworn declaration filed in *Bingham v. U.S. Dep't of Justice*, Civil No. 05-00475 (PLF) (D. District of Columbia), FBI Special Agent Jacqueline Maguire states:

> I did locate one videotape taken from a closed circuit television at the Doubletree Hotel in Arlington, Virginia.  I determined, however, that the videotape did not show the impact of Flight 77 into the Pentagon on September 11, 2001.

*See* Declaration of Jacqueline Maquire at ¶16, attached as Exhibit 5.  This quite clearly is not the case, as the explosion that resulted from the plane crashing into the Pentagon is clearly visible on the tape.  *See*, *e.g,* Exhibit 3; *see also* www.judicialwatch.org.

The records obtained by Judicial Watch in this case, and, indeed, the case itself, clearly added to "the fund of information" available to citizens about the terrorist attacks of September 11, 2001.  Judicial Watch's efforts to obtain and disseminate these videotapes -- including not only the videotapes themselves, but also information about the FBI's initial failure to respond to Judicial Watch's requests and the litigation process itself -- conferred a substantial, educational benefit on the public.

           b.     **Commercial Benefit/Nature of Plaintiff's Interest**.

The second and third factors -- whether a plaintiff will derive commercial benefit from disclosure and the nature of the plaintiff's interests in the records -- are closely related and

typically considered together. *Cotton*, 63 F.3d at 1120. Judicial Watch is a not-for-profit, tax-exempt, educational organization. It has no commercial interest in this case. Instead, Judicial Watch's interest is in obtaining and disseminating information of interest to the public, which, significantly, is identical to the purpose behind FOIA. S. Rep. No. 93-854, 93 Cong., 2d Sess. at 19 (1974). Accordingly, Judicial Watch's entirely non-commercial motive and its interest in obtaining and disseminating the records at issue here clearly entitle it to an award of attorney's fees and expenses.

c.    <strong><u>Reasonableness of Government's Basis for Withholding</u></strong>.

This final criterion provides, in part, that where the government has unreasonably withheld records, a fee award is appropriate if the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *See Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1097 (D.C. Cir. 1992) (citations omitted); *Cazalas v. United States Dep't of Justice*, 709 F.2d 1051, 1054 (5th Cir. 1983); *Matlack, Inc. v. United States Environmental Protection Agency*, 868 F. Supp. 627, 632 (D. Del. 1994).

The FBI's conduct clearly justifies a fee award. First, the FBI blatantly failed to comply with FOIA's statutorily-mandated deadlines, leaving Judicial Watch with no alternative but to file a lawsuit to obtain the records at issue. The FBI compounded this failure by failing to respond substantively to Judicial Watch's administrative appeal of the December 15, 2004 request or respond in *any* fashion to Judicial Watch's second request of June 29, 2006, even though the parties were, at that very point in time, negotiating a stipulation and agreed order to require production of the Citgo videotape. This failure to respond to the June 29, 2006 request forced Judicial Watch to have to amend its complaint.

10

In addition to these procedural violations of FOIA, the FBI's continued withholding of the Citgo videotape after the conclusion of the Moussaoui trial was improper. The FBI claimed that the videotapes at issue were exempt from production under the "law enforcement" provisions of 5 U.S.C. § 552(b)(7)(A). However, as Judicial Watch demonstrated to the FBI in its May 22, 2006 letter, that claim of exemption lost all viability when the Moussaoui trial ended. *See* Exhibit 2. The FBI neither responded substantively to Judicial Watch's May 22, 2006 letter, nor made any other claims of exemption to try to justified its continued withholding of the Citgo videotape, but continued to withhold the videotape from Judicial Watch. The FBI's continued withholding of the Citgo videotape from Judicial Watch after the conclusion of the Moussaoui trial was clearly improper, as any legitimate law enforcement reason to continue to withhold the videotape had ended.

The FBI also improperly withheld the Doubletree Hotel videotape. In failing to respond in any fashion to Judicial Watch's June 29, 2006 FOIA request, the FBI also failed to assert any claims of exemption at all. In the August 14, 2006 stipulation and agreed order, the FBI admitted to possessing the videotape. Therefore, the FBI's withholding of the Doubletree Hotel videotape after receipt of Judicial Watch's June 29, 2006 FOIA request was improper, as the FBI never had a valid reason for withholding the videotape when Judicial Watch requested it.

The FBI offered no legitimate basis for failing to respond substantively to Judicial Watch's April 4, 2005 administrative appeal or for failing to respond to Judicial Watch's June 29, 2006 request in *any* manner at all. Nor has the FBI offered a legitimate reason for failing to produce the requested videotapes before Judicial Watch sought to compel their production by

court order.  Under the circumstances, an award of attorney's fees and expenses clearly is more than amply justified.

### 3.    The Requested Award is Reasonable.

Fee awards are calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate, resulting in a lodestar amount.  *See Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980).  As public interest lawyers, Judicial Watch's attorneys do not have customary billing rates, as most private practice attorneys do.  Nevertheless, public interest attorneys may be awarded reasonable attorney's fees calculated "according to the prevailing market rates in the relevant community."  *Blum v. Stenson*, 465 U.S. 886, 896 (1984) (fees awarded based on prevailing rate whether plaintiff is represented by private or nonprofit counsel); *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995); *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988).

It is well established that awards of attorney's fees may be calculated based on the *Laffey* Matrix, because, in the absence of a specific sub-market analysis of attorney's fees, "use of the broad *Laffey* Matrix may be by default the most accurate evidence of a reasonable hourly rate." *Covington*, 57 F.3d at 1114 n.5.[5]  A copy of the *Laffey* Matrix is attached as Exhibit 6.  Judicial Watch requests that its fee award be calculated under the *Laffey* Matrix.

---

[5]    This matrix, commonly referred to as the "*Laffey* Matrix" or the "United States Attorney's Office Matrix," is based on hourly rates allowed by the District Court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983).  Use of an updated *Laffey* Matrix was implicitly endorsed by the U.S. Court of Appeals for the District of Columbia Circuit in *Save Our Cumberland Mountains*, 57 F.2d at 1525.  The Court subsequently declared that parties may rely on the updated *Laffey* Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area.  *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n.14 (D.C. Cir. 1995).

A verified itemization of attorney/paralegal time expended by Judicial Watch in this matter is attached as Exhibit 1. Unless otherwise indicated, the itemization was generated from the contemporaneously-kept time records of the individuals who worked on the case: Paul J. Orfanedes, Dale F. Wilcox, Meredith L. Di Liberto, and David F. Rothstein. The rates applied to the time recorded in Exhibit 1 are adopted from the *Laffey* Matrix.

Mr. Orfanedes is an attorney who graduated from The American University's Washington College of Law in 1990. He has been practicing law continuously since that time and is an experienced litigator and has been admitted to practice before numerous state and federal courts, including the Bar of this Court.

Mr. Wilcox is an attorney who graduated from Regent University School of Law in 1996. He has been practicing law continuously since that time and is admitted to the Virginia State Bar as well as to the Bar of this Court.

Ms. Di Liberto is an attorney who graduated from Regent University School of Law in 2000. After graduating from law school, Ms. Di Liberto worked as a law clerk in Connecticut from approximately September 2000 to December 2001. She has been practicing law continuously since April 2002 and is admitted to the New Jersey Bar as well as to the Bar of this Court.

Mr. Rothstein is a senior litigation assistant/paralegal who graduated from The Catholic University of America's Columbus School of Law in 1994. He has been working as a paralegal at Judicial Watch since 2003.

13

**B.    Judicial Watch is Entitled to Reimbursement for Its Litigation Expenses.**

Judicial Watch has incurred litigation expenses (other than fees of counsel) of $369.68

This consists of the $350.00 filing fee to initiate this action and $19.68 in postage for serving the

complaint via certified U.S. mail.  *See* Exhibit 7.  As provided under FOIA and 28 U.S.C. §

1920, these expenses should be reimbursed to Judicial Watch.

**III.    Conclusion.**

For the foregoing reasons, Judicial Watch respectfully requests that it be awarded

$11,775.00 in attorney's fees and $369.68 in litigation expenses pursuant to 5 U.S.C. §

552(a)(4)(E) and 28 U.S.C. § 1920, for a total award of $12,144.68.

Respectfully submitted,
JUDICIAL WATCH, INC.

/s/ Paul J. Orfanedes
D.C. Bar No. 429716
Meredith L. Di Liberto
D.C. Bar No. 487733
Suite 500
501 School Street, S.W.
Washington, DC 20024
(202) 646-5172

Attorneys for Plaintiff

**VERIFICATION**

I hereby verify under penalty of perjury of the laws of the United States that the foregoing
is true and correct to the best of my knowledge and belief.  Executed on December 8, 2006 in
Washington, D.C.

/s/ Paul J. Orfanedes

14

## <u>LOCAL RULE 7.1(M) CERTIFICATE</u>

On December 1, 2006, I contacted Jonathan Zimmerman, counsel for the FBI, by e-mail to convey that Judicial Watch intended to move for attorney's fees and expenses in this matter.  I attached a verified, preliminary itemization of Judicial Watch's attorney's fees and expenses.  I also sought the opportunity to resolve the fee request without the added expense and time of drafting the motion.  On December 4, 2006, Mr. Zimmerman replied by e-mail that the FBI intended to oppose any motion for attorney's fees and expenses.

<u>/s/ Paul J. Orfanedes</u>

15