## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.06-CV-01135 (PLF) |
| | ) | |
| FEDERAL BUREAU OF | ) | |
| INVESTIGATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AWARD
### OF ATTORNEY'S FEES AND LITIGATION EXPENSES

Plaintiff Judicial Watch, Inc. ("Judicial Watch"), by counsel and pursuant to 5 U.S.C. §

552(a)(4)(E) and 28 U.S.C. § 1920, submits this reply in support of its motion for an award of

attorneys fees and litigation expenses.  As grounds therefor, Judicial Watch states as follows:

### MEMORANDUM OF LAW

**I.      Judicial Watch Has Substantially Prevailed and Is Eligible for an Award of
Attorney's Fees.**

The FBI's attempts to redefine its actions as voluntary are disingenuous at best and create

the erroneous impression that Judicial Watch is relying on a "catalyst" theory to support its

motion for a fee award.  First, the release of the two videotapes at issue was *not* the result of the

FBI's voluntary actions, but instead resulted from three court orders.  Second, Judicial Watch

does not rely on a "catalyst" theory to support its motion for a fee award, nor did it ever so much

as mention the "catalyst" theory in its motion.  Third, the law of this circuit clearly demonstrates

that Judicial Watch has substantially prevailed.

A.     **The FBI Was Not Acting Voluntarily.**

In its opposition, the FBI claims, for the first time, that it acted voluntarily in releasing the videotapes at issue.  Defendant's Opposition to Plaintiff's Motion for Award of Attorney's Fees and Litigation Expenses ("Def's Opp.") at 3, 4, 5, 8, 9, 10, 11.  The FBI's efforts to characterize its actions as "voluntary" cannot, however, change the simple fact that Judicial Watch secured the release of the videotapes at issue by orders of this Court.[1]

The FBI claims that "at the outset of this lawsuit ... it planned to voluntarily release the Nexcomm/Citgo gas station videotape" and that the stipulations and agreed orders approved and entered by this Court "assumed" the voluntary nature of the FBI's actions.  Def's Opp. at 8.  The FBI's assertion belies any reasonable interpretation of the stipulations and agreed order or of the facts of this case.  Not only do the stipulations and agreed orders omit any reference to the "voluntary" production of the tapes, but the FBI clearly had every opportunity to "voluntarily" release the tapes to Judicial Watch upon receipt of Judicial Watch's FOIA requests.  For more than 18 months following Judicial Watch's first request, the FBI could have released the Citgo videotape "voluntarily," but it failed to do so.  For more than 14 months following Judicial Watch's administrative appeal, the FBI could have released the Citgo videotape "voluntarily," but it failed to do so.  Likewise, the FBI could have released the Citgo videotape "voluntarily" in the month that followed Judicial Watch's May 22, 2006 letter to the FBI noting the end of the

---

[1]      On July 21, 2006, the Court approved and entered the parties' first Stipulation and Agreed Order requiring the production of the Citgo videotape by October 18, 2006.  On August 18, 2006, the Court approved and entered the parties' second Stipulation and Agreed Order requiring the production of the Doubletree videotape by November 9, 2006.  This date was extended to December 22, 2006 by a subsequent Stipulation and Agreed Order approved and entered by the Court on November 16, 2006.

criminal trial of convicted 9/11 co-conspirator Zacarias Moussaoui and the U.S. Department of Defense's release of a Pentagon security videotape. Again, it failed to do so. Similarly, the FBI could have released the Doubletree videotape "voluntarily" after it received Judicial Watch's June 29, 2006 FOIA request, but it failed to do so.

Clearly, Judicial Watch was without any legal remedy prior to the Court's July 21, 2006 approval and entry of the parties' Stipulation and Agreed Order requiring production of the "Citgo" videotape by October 18, 2006. At that point, Judicial Watch had an enforceable court order that required the FBI to produce the Citgo videotape by a date certain, without redactions other than for privacy reasons, and without charging Judicial Watch for search or duplication costs. If the FBI had failed to comply, it could have been punished for contempt. In this same way, the Court's approval and entry of the parties' stipulations and agreed orders on August 18, 2006 and November 16, 2006 provided Judicial Watch with enforceable orders that require the FBI to produce the Doubletree videotape by a date certain, without redactions other than for privacy reasons, and without charging Judicial Watch for search or duplication costs. Failure to obey these court orders also could have resulted in the FBI being held in contempt. There was nothing "voluntary" about the FBI's production of either videotape.

**B.    <u>Judicial Watch Does Not Rely on a "Catalyst" Theory.</u>**

Similar to its attempt to redefine its own actions as something they were not, the FBI also attempts to redefine Judicial Watch's theory of recovery. The FBI claims that Judicial Watch is employing a "catalyst" theory of recovery. The FBI is wrong. As was plainly evident from its motion, Judicial Watch argues that it is entitled to an award of attorney's fees because it has "substantially prevailed" by obtaining court orders requiring production of the videotapes at issue

by dates certain, without redactions other than for privacy reasons, and without being charged for

search or duplication costs -- relief that clearly "changed the relationship between the parties"

and awarded Judicial Watch "some relief on the merits." *Davy v. CIA*, 456 F.3d 162 (D.C. Cir.

2006).

> **C.    D.C. Circuit Law Supports Judicial Watch's Eligibility for
> This Attorney Fee Award.**

In addition to misconstruing its own actions and Judicial Watch's theory of recovery, the

FBI's opposition demonstrates complete disregard for the D.C. Circuit's ruling in *Davy*.  In

*Davy*, a FOIA requestor and an agency entered into a stipulation establishing dates by which the

agency was required to produce responsive records to the requestor, and the court memorialized

the stipulation in an order, making the deadlines judicially enforceable.  The Court held that the

requestor had "substantially prevailed."  *Davy*, 456 F.3d at 163, 165.

The FBI claims that as "a panel opinion, [*Davy*] cannot overturn the D.C. Circuit's

holding in *Oil, Chemical and Atomic Workers*, which is directly on point here."  Def's Opp. at 10

(citation omitted).  This statement is astonishing for at least three reasons:  (1) that the FBI would

suggest binding precedent is somehow less authoritative because it was decided by a three-judge

panel; (2) that the FBI would fail to advise the Court that *Oil, Chemical and Atomic Workers* also

was decided by a three-judge panel; and (3) that the FBI also would fail to advise the Court that

the D.C. Circuit declined to rehear the case en banc.  *Oil Chemical and Atomic Workers In'tl

Union v. Dep't of Energy*, 2002 U.S. App. LEXIS 16074 (D.C. Cir. August 8, 2002).  Both *Davy*

4

and *Oil, Chemical and Atomic Workers* remain good law.[2]  Because the two cases differed

factually, the panels reached different results.  As *Davy* noted:

> In [*Oil, Chemical and Atomic Workers*] . . . [w]e held that the order requiring the
> agency to search the records did not constitute court-ordered relief on the merits.
> We highlighted the order's interim nature, which was procedural -- conduct a
> search -- as opposed to substantive" produce documents.  (sic)  We stated, "Before
> August 23, the court had not ordered the Energy Department to turn over any
> documents; after August 23, the Energy department still had no obligation to do
> so.  Accordingly, OCAW did not obtain relief on the merits because it sought
> documents, not merely a search therefor.

*Davy*, 456 F.3d at 165 (internal citations omitted).

Judicial Watch agrees with the FBI that *Oil, Chemical and Atomic Workers* is instructive

here, but only because it is so readily distinguishable from the facts of this case.  *Oil, Chemical*

*and Atomic Workers* is readily distinguishable for at least three reasons.  First, the order at issue

was a status report styled as a "stipulation and order," but it did not require the agency to produce

any responsive documents to the requestor.  288 F.3d at 457.  In this case, by contrast, Judicial

Watch obtained court orders expressly requiring the FBI to requiring production of the

videotapes at issue by dates certain, without redactions other than for privacy reasons, and

without charging Judicial Watch for search or duplication costs.

Second, the Court in *Oil, Chemical and Atomic Workers* found that there had been no

change in the legal relationship between the parties.  288 F.3d at 458.  The Court noted that

private settlements are different from court-ordered consent decrees and that the parties'

agreement amounted to a private settlement agreement.  In this case, by contrast, the parties'

---

[2]        *Davis v. Dep't of Justice*, 460 F.3d 92, 106 (D.C. Cir. 2006), which, according to
the FBI, demonstrates *Oil, Chemical and Atomic Workers*'s alleged superiority over *Davy*,
actually states quite the opposite.  In *Davis*, the Court held that "one three-judge panel ... does not
have the authority to overrule another three-judge panel of the court."

5

stipulations and agreed orders were approved and entered by the Court and, once so memorialized by the Court, became enforceable orders.  Prior to the entry of the court-ordered stipulations, Judicial Watch had been at the mercy of the FBI's alleged good intentions to produce the videotapes.  Once the stipulations were approved, entered, and memorialized by the Court, however, Judicial Watch had a number of legal remedies available to it if the FBI failed to produce the videotapes as required.  The stipulations and agreed orders in this case clearly changed the legal relationship between the parties.

Third, in *Oil, Chemical and Atomic Workers*, the Court found that, because the order at issue did nothing more than approve the parties' terms of dismissal -- which the Court deemed unnecessary in any event -- the requestor had not obtained any relief on the merits.  *Id.* at 457-58. In this case, the stipulations and agreed orders entered by this Court were much more than a formality.  They required the FBI to produce the videotapes by dates certain and constituted a substantial portion of the relief sought by Judicial Watch when it initiated this litigation.

## II.    The Relevant Factors Show That Judicial Watch Is Entitled to an Award of Attorney's Fees.

Despite its efforts to downplay the content of the videotapes at issue, the FBI does not appear to challenge the public benefit that resulted from Judicial Watch's securing their release.[3]

---

[3]    The FBI attempts to add a new factor to the customary, four-part "balancing" test used to determine whether a requestor is entitled to an award of fees under FOIA:  a purported lack of substantive content of the records produced.  Def's Opp. at 12.  In addition to being inventive and having no support in the law of this Circuit, the FBI apparently misunderstands, or misconstrues, the nature of the public interest in the videotapes.  As Judicial Watch demonstrated in its opening memorandum, Judicial Watch sought the videotapes at issue not because of what they showed or did not show, but because of the public perception, whether justified or not, that the government was withholding information about the fate of Flight 77 and the September 11, 2001 attack on the Pentagon.  *See* Plaintiff's Verified Motion For Award of Attorney's Fees and Litigation Expenses ("Mot. For Fees") at 7-8.  Production of these videotapes thus conferred a

Def's Opp. at 12.  Similarly, the FBI does not appear to challenge the nature of Judicial Watch's interest in the videotapes or its lack of commercial benefit in either the videotapes or this case. All that remains of the balancing factors to be considered by the Court is the reasonableness, or lack thereof, of the FBI's withholding of the videotapes.

It is important to note that this final factor addresses whether the FBI's withholding of the videotapes was unreasonable, not whether the FBI's cooperation *after* forcing Judicial Watch to file a lawsuit was reasonable.  Far from demonstrating that its pre-litigation conduct was reasonable, the FBI's opposition demonstrates disdain for its obligations under FOIA.  For example, the FBI states that the "only significant delay plaintiff endured was a delay in a decision on its appeal of the denial of its first FOIA request."  Even if this were the case, and it clearly is not, this statement demonstrates a nonchalant attitude toward FOIA deadlines.  FOIA provides definite and clear deadlines both for agencies and requestors.  These deadlines are not mere guidelines or suggestions, and surely the FBI would argue as much had Judicial Watch not waited the statutorily-mandated amount of time before filing suit.

With respect to its December 15, 2004 FOIA request, the FBI acknowledged receipt of Judicial Watch's administrative appeal on April 8, 2005.  Not only did the FBI fail to respond to this appeal within the statutory-mandated  time frame, but it failed to respond in *any* fashion.  At no time did the FBI ever inform Judicial Watch as to the reasons for the delay.  Nor did the FBI request additional time to consider Judicial Watch's appeal.  It simply ceased communicating. On May 22, 2006, after waiting more than a year for the FBI to issue a decision on the appeal,

---

substantial benefit on the public because it enabled the public to see for itself what was on the previously withheld videotapes.

Judicial Watch wrote to the FBI requesting an update. In its letter, Judicial Watch carefully explained to the FBI that, due to the completion of the Moussaoui trial, any law enforcement interest in the videotapes was moot. Mot. For Fees at Exhibit 2. Judicial Watch also noted that the U.S. Department of Defense had reached this same conclusion in releasing a Pentagon security videotape to Judicial Watch in a related matter. *Id.*

On June 9, 2006, Judicial Watch received a letter from the FBI. The letter made no mention of the Moussaoui trial and admitted that Judicial Watch's appeal had not yet been assigned to an attorney. *See* Exhibit 1, attached hereto. Even after Judicial Watch provided the FBI with the information it needed to avoid a lawsuit, the FBI continued to withhold the requested records or explaining the basis for its withholding. In fact, the FBI still has not yet provided a reasonable explanation for its behavior. Nowhere in its opposition does the FBI attempt to explain why it continued to withhold the videotape.[4] The FBI's opposition is devoid of evidence of reasonableness. Rather than attempting to explain to Judicial Watch and the Court why it failed to respond to Judicial Watch's administrative appeal in any fashion despite the fact that more than one year had passed since the appeal had been filed and the Moussaoui trial had ended, the FBI tries to downplay the importance of FOIA deadlines. Contrary to the FBI's assertion, this is not the type of behavior the Court should encourage. Def's Opp. at 14.

---

[4]    In fact, the FBI never provided the specific reason for withholding the videotapes under FOIA Exemption 7. The FBI's March 22, 2005 letter states only that the responsive videotapes are located in an investigative file allegedly exempt from disclosure under Exemption 7. *See* Exhibit 2, attached hereto. It was only through information provided to Judicial Watch in another matter, *Judicial Watch, Inc. v. U.S. Dep't of Defense*, C.A. No. 06-0309 (RBW), that Judicial Watch learned the "investigative file" at issue was the prosecution of September 11, 2001 co-conspirator Zacarias Moussaoui.

Similarly, the FBI also failed to respond to Judicial Watch's June 29, 2006 FOIA request in any fashion.  The FBI seems to take issue with Judicial Watch enforcing its FOIA rights "one month after the request was received."  Def's Opp. at 13.  By suggesting that Judicial Watch somehow acted too hastily, the FBI again demonstrates its nonchalant attitude toward statutory deadlines.  Judicial Watch already had waited more than 18 months for a resolution of its first FOIA request, and with the FBI's history of unresponsiveness, Judicial Watch reasonably expected its second request would only receive more of the same treatment.  The intense public interest in the videotapes required prompt resolution of this second request, and, being in the midst of negotiations with the FBI regarding the first request, Judicial Watch acted in accordance with FOIA and in the interests of judicial economy by amending its complaint to include the second FOIA request as well.  The FBI should not be rewarded for being less recalcitrant, but still untimely, in responding to Judicial Watch's second request.

In addition to ignoring FOIA deadlines, the FBI also ignores the consequences of its unreasonable behavior.  By failing to respond in a timely manner, the FBI forced Judicial Watch to file a lawsuit in order to protect its interests.  Therefore, all of the staff hours and litigation expenses Judicial Watch incurred in initiating and prosecuting this lawsuit are directly attributable to the FBI's recalcitrance.  The FBI, not Judicial Watch, should be required to bear these costs and expenses.

**III.    Work Conducted by Judicial Watch's Paralegal Is Compensable and Should <u>Be Awarded</u>.**

Lastly, the FBI attempts to take issue with Judicial Watch's inclusion in the requested fee award of time spent on this lawsuit by a senior litigation assistant/paralegal.  Def's Opp. at 14-15.

9

In *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 974 (D.C. Cir. 2004), the Court upheld a fee award that included paralegal time.[5]  The Court explained that, as long as the legal assistant's time records provided "adequate detail and show that these employees performed suitable tasks," paralegal time should be included in an award.  *Id.*

The accounting of the time spent on this matter by Judicial Watch's senior litigation assistant is more than adequately detailed and clearly demonstrates that he performed suitable tasks -- proofreading and filing documents, serving the Complaint and following-up on service of process, conferring with attorneys, etc. --  are legal in nature.  In fact, due to the size of Judicial Watch's legal department in its Washington D.C. office, (Judicial Watch has five attorneys and two paralegals on staff), if the senior litigation assistant had not performed these tasks, then it is more than likely an attorney would have had to do so.  In *American Petroleum Institute v. Environmental Protection Agency*, 72 F.3d 907, 916 (D.C. Cir. 1996), the Court considered the size of a law firm as a factor in determining whether certain tasks could have been performed by other individuals.  Judicial Watch's requested award of attorney's fees and litigation expenses, including time spent by its paralegal, is thus reasonable.

---

[5]    The FBI relies on a few, mostly non-binding cases for its proposition that Judicial Watch's request for senior litigation assistant/paralegal fees should be denied.  Def's Opp. at 14-15.  The FBI's reliance on at least two of these cases is misplaced.  In both *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982) and *Democratic Central Comm. v. Washington Metro. Area Transit Comm'n*, 12 F.3d 269, 272 (D.C. Cir. 1994), the courts declined to award fees for paralegal expenses because the requests were made in Rule 54(d) motions for costs, not in motions for fee awards.  The courts did not deny the requests for paralegal fees because they were paralegal fees, but because Rule 54(d) motions were not the proper vehicle for requesting them.  In *Allen*, the court even stated that paralegal fees are "recoverable only as part of a prevailing parties award for attorney's fee and expenses."  *Allen*, 665 F.2d at 697.

IV.    **Additional Fees Associated with the Preparation and Filing of This Reply**.

In addition to the $12,144.68 in attorney/paralegal fees and litigation expenses sought by Judicial Watch in its opening memorandum, Judicial Watch also should be awarded attorney/paralegal fees incurred in preparing this reply.  A supplemental, verified itemization of the additional fees Judicial Watch incurred in preparing this reply is attached hereto as Exhibit 3.[6]

V.    **Conclusion**.

For the foregoing reasons, and for the reasons set forth in Plaintiff's Verified Motion for Award of Attorney's Fees and Litigation Expenses, Judicial Watch respectfully requests that it be awarded $17,554.50 in attorney/paralegal fees and $369.68 in litigation expenses, for a total award of $17,924.18.

Respectfully submitted,
JUDICIAL WATCH, INC.

/s/ Paul J. Orfanedes
D.C. Bar No. 429716
Meredith L. Di Liberto
D.C. Bar No. 487733
Suite 500
501 School Street, S.W.
Washington, D.C.  20024
(202) 646-5172

*Attorneys for Plaintiff*

---

[6]    Cristina Rotaru has been employed as a litigation assistant/paralegal at Judicial Watch since April 2002.  The hourly rate for her services is adopted from the *Laffey* Matrix.

11