# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 25, 2008      Decided April 11, 2008

No. 07-5158

JUDICIAL WATCH, INC.,
APPELLANT

v.

FEDERAL BUREAU OF INVESTIGATION,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 06cv01135)

---

*Paul J. Orfanedes* argued the cause for appellant. With him on the briefs were *Dale L. Wilcox* and *Meredith L. Di Liberto*.

*Michael E. Robinson*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the briefs were *Jeffrey S. Bucholtz*, Acting Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, and *Leonard Schaitman*, Attorney.

Before: TATEL and GARLAND, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Pursuant to the Freedom of Information Act, appellant Judicial Watch obtained two court orders directing the government to release by specified dates videotapes relevant to the tragic events of September 11, 2001. After receiving the tapes, Judicial Watch moved for attorneys' fees. The government argued, and the district court agreed, that the organization was ineligible for an award of fees because it had failed to "substantially prevail[]" as FOIA requires. 5 U.S.C. § 552(a)(4)(E). Because we have thrice held that court orders like the ones at issue here render plaintiffs prevailing parties for purposes of FOIA's attorney fee provision, we reverse.

I.

Designed "to facilitate public access to Government documents," *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991), the Freedom of Information Act requires federal agencies to disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions. 5 U.S.C. § 552. In December 2004, Judicial Watch, a non-profit organization, filed a FOIA request with the FBI seeking disclosure of videotapes showing "the deliberate crash of Flight 77 into the Pentagon on September 11, 2001." Appellants' Opening Br. 3. Responding to the request, the FBI stated that although it possessed some of the videotapes, it would withhold them pursuant to FOIA Exemption 7(A). *See* 5 U.S.C. § 552(b)(7)(A) (exempting from disclosure documents "compiled for law enforcement purposes" that "could reasonably be expected to interfere with enforcement proceedings"). After filing an administrative appeal that the FBI ignored for over a year, Judicial Watch sued the Bureau in federal district court in June 2006. In the meantime, Judicial Watch obtained two of the requested

3

videotapes directly from the Department of Defense, leaving only one in dispute.

Less than a month after Judicial Watch filed suit, the parties entered into a "Stipulation and Agreed Order" whereby the FBI acknowledged that it possessed the final videotape and agreed to disclose it, but requested additional time to redact the tape to protect personal privacy. Judicial Watch raised no objection, and the order concluded: "Upon completion of the redaction, Defendant shall produce the videotape to Plaintiff without any other redactions and without imposing search or duplication fees on Plaintiff in this case." Stipulation and Agreed Order ¶ 5, *Judicial Watch v. FBI*, No. 06-1135 (July 19, 2006). Two days after the parties reached agreement the district court approved the order, which set an October 18 disclosure deadline. Pursuant to this order, the FBI produced a redacted version of the videotape.

About a week after bringing suit, Judicial Watch filed a second and related FOIA request with the FBI. This request sought another videotape showing the attack on the Pentagon, which was recorded by a nearby Doubletree Hotel's security camera. Having received no response from the Bureau regarding this second request, Judicial Watch amended its complaint, then pending in district court, to include a demand for the Doubletree tape. Once again, the FBI and Judicial Watch reached agreement, entering into a second "Stipulation and Agreed Order." And once again, the FBI acknowledged that it possessed the requested videotape and agreed to disclose it after making certain redactions. The order commanded, "Defendant shall have until and including November 9, 2006 in which to complete its redaction of the Doubletree Hotel videotape and to produce the videotape to Plaintiff without any other redactions and without imposing

4

any search or duplication fees on Plaintiff in this case." Stipulation and Agreed Order ¶ 7, *Judicial Watch*, No. 06-1135 (Aug. 14, 2006). Four days later, the district court signed off on the order. After a final stipulation and order granting the FBI additional time to complete its redactions, Judicial Watch received the Doubletree tape.

With the records it sought in hand, Judicial Watch requested approximately $12,000 in attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E), which allows courts to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." Judicial Watch argued that it had "substantially prevailed" by securing enforceable court orders requiring the videotapes' release by dates certain. The district court denied Judicial Watch's motion, and this appeal followed. Because determining whether a plaintiff has "substantially prevailed" under FOIA section 553(a)(4)(E) presents a question of statutory interpretation, we review the district court's decision de novo. *See Davy v. CIA*, 456 F.3d 162, 164 (D.C. Cir. 2006).

**II.**

In a string of recent cases, we have considered whether plaintiffs have "substantially prevailed" for purposes of FOIA's attorney fee provision. *See Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187 (D.C. Cir. 2007) ("*CRT*"); *Davy*, 456 F.3d 162; *Edmonds v. FBI*, 417 F.3d 1319 (D.C. Cir. 2005); *Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy*, 288 F.3d 452 (D.C. Cir. 2002) ("*OCAW*"). Because we recently led interested readers on a thorough tour of this case law, *see CRT*, 511 F.3d at 192-95; *Davy*, 456 F.3d at 164-65, we decline to repeat the exercise here even though, at least as far as the FBI is concerned, our

5

holdings apparently maintain some aura of mystery. For present purposes, we offer the following brief summary.

This court once followed the so-called "catalyst theory" for attorneys' fees in FOIA cases, meaning that "[s]o long as the 'litigation substantially caused the requested records to be released,' [a] FOIA plaintiff could recover attorney's fees even though the district court had not rendered a judgment in the plaintiff's favor." *OCAW*, 288 F.3d at 454 (quoting *Chesapeake Bay Found., Inc. v. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993)). After the Supreme Court rejected that approach in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 605 (2001), we held in *OCAW* that a FOIA plaintiff has "substantially prevailed" if he has "'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree." *OCAW*, 288 F.3d at 456-57 (quoting *Buckhannon*, 552 U.S. at 603). The question now before us is whether the two court orders Judicial Watch secured, which required the FBI to disclose specified videotapes by certain dates, satisfy these criteria, rendering the organization a prevailing party eligible for a fee award.

We need not dwell long on this question, for *Davy v. CIA* answers it for us. There, an author filed a FOIA request seeking documents related to the CIA's alleged role in the assassination of President John F. Kennedy. 456 F.3d at 163. After the CIA denied this request and the plaintiff sued, the parties "reached a Joint Stipulation for the production of responsive documents," which provided that the "CIA will provide Plaintiff all responsive documents, if any . . . by certain dates." *Id.* at 164 (internal quotation marks omitted). Once "[t]he district court approved the Joint Stipulation and memorialized it in a court order," the CIA complied and disclosed the documents. *Id.* Observing that the order

"provide[d] Davy with the precise relief his complaint sought," we held that the plaintiff had "substantially prevailed" because "the order changed the 'legal relationship between [the plaintiff] and the defendant,'" and because the plaintiff "was awarded some relief on the merits of his claim." *Id.* at 165 (quoting *Buckhannon*, 532 U.S. at 604). We saw no functional difference between a joint stipulation and order and a "settlement agreement enforced through a consent decree," which the *Buckhannon* Court held may serve as the basis for an award of attorneys' fees. *Id.* at 166. Prior to the parties' joint stipulation and order, we explained, "the CIA was not under any judicial direction to produce documents by specific dates; the . . . order changed that by requiring the Agency to produce all responsive documents by the specified dates." *Id.* (internal quotation marks omitted). And "[i]f the Agency failed to comply with the order," we noted, "it faced the sanction of contempt." *Id.*

This should sound familiar. If not, consider our even more recent opinion in *CRT*, a case concerning another district court order requiring an agency to disclose certain records to a requesting plaintiff. 511 F.3d at 197. Reaffirming our holding in *Davy*, we explained that in the earlier case, "[e]ven though the parties arrived at a mutually acceptable agreement, . . . the order memorializing the agreement created the necessary judicial *imprimatur* for plaintiffs to be a prevailing party." *Id.* Because the agency in *CRT* "released the disputed documents only after the order was issued, and it released the documents pursuant to that order," we concluded that "our decision in *Davy* control[led]." *Id.* Accordingly, we held, in language hardly difficult to decipher, that "[o]nce an order has been adopted by the court, *requiring the agency to release documents*, the legal relationship between the parties changes." *Id.*; *see also Edmonds*, 417 F.3d at 1323 (holding that an order requiring

7

the FBI "to turn over all nonexempt documents by a date certain," along with an order requiring expedited processing of the plaintiff's request, rendered the plaintiff a prevailing party eligible for attorneys' fees under FOIA).

Judicial Watch argues that "this case is factually indistinguishable from *Davy*" because here, as there, "the parties had stipulated that the defendant agency would produce the requested records by a date certain and the trial court approved the parties' joint stipulation." Appellant's Opening Br. 12.  We agree.  The first joint stipulation and order, duly signed by the district court, stated that "[u]pon completion of the redaction, [the FBI] *shall produce* the videotape to Plaintiff" by October 18, 2006.  Stipulation and Agreed Order ¶ 5, *Judicial Watch*, No. 06-1135 (July 19, 2006) (emphasis added).  Similarly, the second agreed-upon order stated that the FBI "*shall have until and including November 9, 2006* in which to complete its redaction of the Doubletree Hotel videotape and *to produce the videotape to Plaintiff* . . . ."  Stipulation and Agreed Order ¶ 7, *Judicial Watch*, No. 06-1135 (Aug. 14, 2006) (emphasis added).  Merely recapitulating these terms, the third stipulation and order extended the disclosure deadline by some seven weeks.  Stipulation and Agreed Order ¶¶ 7-9, *Judicial Watch*, No. 06-1135 (Nov. 8, 2006).  As we said in *CRT*, "[g]iven this record, our decision in *Davy* controls the disposition here." *CRT*, 511 F.3d at 197.  Indeed, if anything, this case is even stronger than *Davy*.  There, the order directed the CIA to "provide Plaintiff all responsive documents, *if any*," *Davy*, 456 F.3d at 164 (quotation marks omitted) (emphasis added), while the orders at issue here specifically identified and required disclosure of the precise records Judicial Watch sought, *see* Stipulation and Agreed Order ¶ 5, *Judicial Watch*, No. 06-1135 (July 19, 2006) (requiring the FBI to redact and disclose "the Nexxcom/Citgo videotape"); Stipulation and

8

Agreed Order ¶ 7, *Judicial Watch*, No. 06-1135 (Aug. 14, 2006) (requiring the FBI to redact and disclose "the Doubletree Hotel videotape").

In spite of all this, the FBI argues that *OCAW* rather than *Davy* controls this case. *OCAW* involved an order, dated August 23, 1999, that the court characterized as a "status report" directing the Department of Energy to search its files and release any nonexempt records to a FOIA requester. 288 F.3d at 457. Over a dissent, the *OCAW* court found that order insufficient to support an award of attorneys' fees. According to the FBI, the order in this case is indistinguishable from the *OCAW* order, and like the *OCAW* plaintiff, Judicial Watch is ineligible for a fee award. As for *Davy*'s and *CRT*'s contrary holdings, the FBI simply says that the "panel in *Davy* was mistaken," Appellee's Br. 21, that the *CRT* panel similarly "misread[] *OCAW*," *id.* at 27, and that we must therefore follow *OCAW* rather than the later opinions. *See Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996) ("[W]hen faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom.")

Given that three post-*OCAW* decisions have rejected the FBI's proposed reading of that case, we must deny the Bureau's request that we revisit *OCAW*'s underlying facts and resurrect the dispute between the dissent and majority in that case. The *OCAW* majority, focusing exclusively on the order's "requirement that the [agency] complete its record review in 60 days," explained: "Before August 23, the court had not ordered the Energy Department to turn over any documents; after August 23, the Energy Department still had no obligation to do so." 288 F.3d at 458. Characterizing that order in *Edmonds*, we said, "*as the OCAW court described it*," the August 23 order "merely direct[ed] the FBI to

9

'complete its record review.'" *Edmonds*, 417 F.3d at 1323 (quoting *OCAW*, 288 F.3d at 458) (emphasis added). We made the same point even more starkly in *Davy*, explaining that in *OCAW*, "[w]e highlighted the order's interim nature, which was procedural—conduct a search—as opposed to substantive—produce documents." *Davy*, 456 F.3d at 165. And we repeated ourselves yet again in *CRT*. *See* 511 F.3d at 194 ("An order from the trial court to the Energy Department to 'complete its record review' within a fixed timetable was not judicial relief." (quoting *OCAW*, 288 F.3d at 458)). True, the *OCAW* dissent read the August 23 order differently, viewing it as a directive to disclose documents. *See OCAW*, 288 F.3d at 465 (Rogers, J., dissenting). But the majority disagreed, stating that if a stipulation between the parties had "outlined documents the government still needed to disclose to the [plaintiff], matters might be different." *Id.* at 458. As we explained in *CRT*, we "addressed exactly that question in *Davy v. CIA*," and concluded that such orders render the plaintiffs who secure them prevailing parties eligible for attorneys' fees. *CRT*, 511 F.3d at 193. In short, the FBI asks us to reach back in time and adopt the dissent's reading of the factual record in a case over a contrary interpretation by the majority, as reaffirmed in three subsequent unanimous decisions by this court. As the government well knows, a three-judge panel has no such authority. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc) ("One three-judge panel . . . does not have the authority to overrule another three-judge panel of the court.").

Like the rest of this case, the government's entreaty that we jettison *Davy* for *OCAW* sparks a certain sense of déjà vu. After we handed down our decision in *Davy*, the government made this precise request in its petition for panel rehearing and rehearing en banc. *See* Appellee's Pet. for Panel Reh'g and Pet. for Reh'g En Banc, *Davy v. CIA*, No. 05-5151 (D.C.

10

Cir. Aug. 25, 2006). There, in a brief authored less than two years ago, the government argued that "[t]he order at issue here and the order in *OCAW* are materially indistinguishable." *Id.* at 9. No judge having called for a vote on the petition, this court unanimously denied the government's request for rehearing in *Davy*. *See* Order Denying Pet. for Reh'g En Banc, *Davy*, No. 05-5151 (D.C. Cir. Sept. 18, 2006). After we issued our decision in *CRT*, the government tried a second time. Asking that panel for rehearing—but declining to take the matter once more to the full court—the government, quoting its *Davy* petition almost verbatim, said, "[t]he order at issue here and the *OCAW* order are materially indistinguishable." Pet. for Reh'g 11, *CRT*, No. 06-5333 (D.C. Cir. Feb. 11, 2008). Unconvinced, the *CRT* panel denied the government's petition. Order Denying Pet. for Reh'g, *CRT*, No. 06-5333, (D.C. Cir. Mar. 14, 2008). Today the government asserts—or rather again reasserts—"[b]ecause the orders here are materially indistinguishable from the relevant court order in *OCAW*, this Court is constrained by *OCAW* to find that Judicial Watch is not a 'substantially prevailing party' here." Appellee's Br. 8. Faced with the same argument for the third time, we see no reason to reach a different result today. Indeed, the government's decision to dust off a thoroughly discredited argument and present it to us anew wastes both our time and the government's resources.

The FBI does make a passing attempt to distinguish this case from *Davy*, arguing in its brief that unlike the order there, the order here allowed the FBI to redact images for privacy reasons before turning over the requested videotapes. But at oral argument, counsel backed away from this distinction, explaining that the government would have made the same argument even if the order had required immediate

11

disclosure. *See* Oral Arg. 15:00-:50. It matters little, for our conclusion would be the same in either case. *Davy* controls.

We return, in the end, to *Buckhannon*, under which a plaintiff becomes a prevailing party once "awarded some relief by [a] court." *Buckhannon*, 532 U.S. at 603; *OCAW*, 288 F.3d at 456-57 (discussing *Buckhannon*). That's precisely what Judicial Watch obtained in this case. The organization wanted two videotapes. It got two videotapes pursuant to court orders. Had the FBI reneged on its promise to release the tapes, forgot to do so, or even delayed disclosure, it would have been subject to contempt. *See Davy*, 456 F.3d at 166; *Edmonds*, 417 F.3d at 1323. Why else would the FBI have needed a third court order allowing an extension of time to complete its redactions? As we have held time and again, orders like these, even when voluntarily agreed to by the government, are sufficient to make plaintiffs eligible for attorneys' fees under FOIA.

Before concluding, we note that the parties spent a significant amount of time debating the effect of a recent congressional enactment—the OPEN Government Act of 2007—that reinstates the catalyst theory in FOIA actions. *See* OPEN Government Act of 2007, Pub L. No. 110-175, § 4(a)(2), 121 Stat. 2524, 2525 (2007). Under the amended FOIA, a plaintiff "has substantially prevailed if the complainant has obtained relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) *a voluntary or unilateral change in position by the agency*, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii) (emphasis added). Because Judicial Watch "substantially prevailed" by securing court orders requiring the government to disclose documents, we need not interpret the new statute or decide whether Congress intended it to apply to pending cases.

12

### III.

Because Judicial Watch "substantially prevailed" in its FOIA action, it is eligible to receive attorneys' fees under 5 U.S.C. § 552(a)(4)(E). To obtain those fees, the organization must first demonstrate that it is "entitled" to them. *See Edmonds*, 417 F.3d at 1327. In making this determination, the district court assesses four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding." *Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992). Balancing these factors is a matter for the district court, whose decision we review for abuse of discretion. *See id.* at 1094. Because the district court found Judicial Watch ineligible for fees, it never reached this second part of the test. We therefore reverse and remand the case for consideration of that question.

*So ordered.*